UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH J. LITTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV1580 LMB |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision

denying the application of Joseph J. Little for Supplemental Security Income under Title XVI of

the Social Security Act and child's insurance benefits under Title II of the Act.  This case has been

assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform

Act and is being heard by consent of the parties.  See 28 U.S.C. § 636(c).  Plaintiff filed a Brief in

support of the Complaint.  (Doc. No. 18).  Defendant filed a Brief in Support of the Answer.

(Doc. No. 23).

**Procedural History**

On September 30, 2009, plaintiff filed applications for Supplemental Security Income and

child's insurance benefits claiming that he became disabled on July 14, 1984.  (Tr. 117-26).  This

_____

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14,
2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is
substituted for Michael J. Astrue as the Defendant in this suit.  No further action needs to be
taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security
Act, 42 U.S.C. § 405(g).

claim was denied initially and, following an administrative hearing, plaintiff's claim was denied in a written opinion by an Administrative Law Judge (ALJ), dated January 26, 2011.  (Tr. 49-50, 13-21).  Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on June 29, 2012.  (Tr. 8, 1-6).  Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

### Evidence Before the ALJ

**A.    ALJ Hearing**

Plaintiff's administrative hearing was held on November 2, 2010.  (Tr. 29).  Plaintiff was present and was represented by counsel.  (Id.).  Also present was vocational expert Dr. John McGowan.  (Id.).

The ALJ examined plaintiff, who testified that he was forty-four years of age, and completed the ninth grade.  (Tr. 30).  Plaintiff stated that he never obtained a GED because every time he tried, he became ill.  (Id.).

Plaintiff testified that he worked at one position for three or four days since 1990. (Tr. 31).

Plaintiff stated that he served seven years in prison for a felon in possession of a firearm charge.  (Id.).  Plaintiff testified that his underlying criminal offense was for possession of drugs. (Tr. 32).  Plaintiff stated that he served two-and-a-half years in prison for that offense.  (Id.).

Plaintiff testified that he was released from prison on September 28, 2009.  (Id.).

Plaintiff stated that he was using a cane during the hearing because he experiences pain in his hip.  (Id.).  Plaintiff testified that he underwent a total right hip replacement in 1993.  (Id.).

Plaintiff stated that he never walks without using the cane.  (Tr. 33).  Plaintiff testified that he has

to keep his leg elevated due to osteoporosis.[2]  (Id.).

Plaintiff stated that he recently underwent rectal surgery.  (Id.).  Plaintiff testified that he

has undergone three such procedures because he keeps developing abscesses.  (Id.).  Plaintiff

stated that he was scheduled to undergo an additional surgery to reconstruct the inside of his

rectum.  (Id.).

Plaintiff's attorney examined plaintiff, who testified that he lies down most of the time and

takes pain medication due to his recent surgery.  (Tr. 35).

Plaintiff stated that he suffers from sickle cell disease.[3]  (Id.).  Plaintiff testified that he

experiences sickle cell crises more often now.  (Tr. 36).  Plaintiff stated that he is attempting to

manage these at home because he does not like going to the hospital.  (Id.).  Plaintiff testified that

during a sickle cell crisis, he is unable to walk because his joints ache so badly.  (Id.).  Plaintiff

stated that, when he is hospitalized due to a sickle cell crisis, he is given an IV, oxygen mask, and

narcotic drugs.  (Tr. 37).  Plaintiff stated that he manages crises at home with pain medication and

rest.  (Id.).  Plaintiff testified that he is in crisis approximately fifteen days a month.  (Id.).

Plaintiff stated that he is bedridden during crises.  (Id.).  Plaintiff testified that he tends to have

sickle cell crises at the same time he experiences discomfort from his colon procedures.  (Id.).

---

[2]Reduction in the quantity of bone or atrophy of skeletal tissue; an age-related disorder characterized by decreased bone mass and loss of normal skeletal microarchitecture, leading to increased susceptibility to fractures.  Stedman's Medical Dictionary, 1391 (28th Ed. 2006).

[3]An autosomal recessive anemia characterized by crescent or sickle-shaped erythrocytes and accelerated hemolysis.  Homozygotes develop "crisis" episodes of severe pain due to microvascular occlusions, bone infarcts, leg ulcers, and atrophy of the spleen associated with increased susceptibility to bacterial infections.  Occurs most commonly in people of African descent.  Stedman's at 80.

Plaintiff stated that his body aches all the time due to the sickle cell disease and arthritis. (Tr. 37-38).  Plaintiff testified that he spends a lot of time sleeping during the day even when he is not in crisis due to the pain medication and sleeping medication he takes.  (Tr. 38).  Plaintiff stated that he does not sleep well at night due to pain.  (Id.).  Plaintiff testified that he spends his days lying around and trying to watch television.  (Tr. 39).

The ALJ next examined vocational expert Dr. McGowan.  (Id.).  The ALJ asked Dr. McGowan to assume a hypothetical claimant with plaintiff's background and the following limitations: lift and carry twenty pounds occasionally and ten pounds frequently; requires a sit/stand option; occasionally climb stairs and ramps; never climb ropes, ladders, and scaffolds; and should avoid concentrated exposure to the hazards of unprotected heights.  (Tr. 39-40).  Dr. McGowan testified that the individual would be capable of performing light, unskilled work, such as parking enforcement officer (78,000 positions nationally, 570 in Missouri); and parking lot attendant (13,700 positions nationally, 440 in Missouri).  (Tr. 40).

The ALJ next asked Dr. McGowan to assume the same limitations as the first hypothetical with the additional limitation of an option to use a cane as necessary.  (Id.).  Dr. McGowan testified that this would not affect the positions he mentioned.  (Id.).

Plaintiff's attorney examined Dr. McGowan, who testified that an individual would be permitted to miss no more than one day a month at the positions he mentioned.  (Tr. 41).

The ALJ indicated that he would leave the record open for thirty days to allow plaintiff to submit additional medical records.  (Tr. 42).

**B.**    <u>**Relevant Medical Records**</u>

The record reveals plaintiff was hospitalized at St. Mary's Hospital from February 9, 1990, through February 12, 1990, due to sickle cell crisis.  (Tr. 782).  It was noted that plaintiff had a history of sickle cell all his life.  (<u>Id.</u>).  Plaintiff complained of both upper and lower extremity pain.  (<u>Id.</u>).  Plaintiff was treated with IV fluids, analgesic, and folic acid.  (<u>Id.</u>).

Plaintiff was hospitalized at St. Mary's Hospital due to a sickle cell crisis from December 6, 1995, through December 14, 1995.  (Tr. 791).  Plaintiff complained of chest and lower extremity pain.  (<u>Id.</u>).

Plaintiff was hospitalized at St. Mary's Hospital from March 17, 1997, through March 20, 1997, due to sickle cell crisis.  (Tr. 822).  Plaintiff reported severe left leg pain.  (<u>Id.</u>).

Plaintiff presented to the emergency room at St. Mary's Hospital on April 26, 1997, after being involved in a motor vehicle accident.  (Tr. 808-09).  Plaintiff sustained trauma to the neck, right hip, and right upper abdominal quadrant.  (<u>Id.</u>).

Plaintiff was hospitalized at St. Mary's Hospital from July 4, 2001, through July 7, 2001, due to sickle cell crisis.  (Tr. 882).  Plaintiff complained of severe, excruciating pain in the lower extremities and pain all over.  (<u>Id.</u>).

Plaintiff was hospitalized at St. Mary's Hospital from September 2, 2001, through September 5, 2001, after he experienced a fall at home while playing basketball.  (Tr. 833).  Plaintiff experienced swelling and pain involving the left thigh and other joint pain, and pain involving his arms and legs.  (<u>Id.</u>).  It was noted that plaintiff had undergone a right hip replacement in the past.  (<u>Id.</u>).

Plaintiff was admitted at St. Mary's Hospital for sickle cell crisis from November 9, 2001,

- 5 -

through November 10, 2001.  (Tr. 868).

Plaintiff was hospitalized at St. Mary's Hospital due to a sickle cell crisis from February 3, 2002, through February 6, 2002.  (Tr. 898).  Plaintiff complained of lower extremity pain, swelling of the left arm and right hip, and flank pain.  (Id.).  Plaintiff was also diagnosed with cocaine and marijuana abuse and significant leukocytosis.[4]  (Id.).

Plaintiff received regular medical treatment through the Bureau of Prisons for sickle cell disease, depression, and various other complaints from February 2003, through February 2009.  (Tr. 289-478).  Plaintiff underwent a psychiatry consult on June 3, 2003, at which time it was noted that plaintiff had a long history of depression.  (Tr. 278).  Plaintiff was diagnosed with depressive disorder NOS, and was assessed a GAF score of 75/80.[5]  (Id.).  Plaintiff was prescribed Zoloft.[6]  (Id.).  On August 27, 2003, plaintiff was diagnosed with a mood disorder

---

[4]An abnormally large number of leukocytes, as observed in acute infections, inflammation, hemorrhage, and other conditions.  See Stedman's at 1075.

[5]A GAF score of 61 to 70 denotes "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  See Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 32 (4th Ed. 1994).  A GAF score of 71 to 80 denotes "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)."  Id.

[6]Zoloft is indicated for the treatment of depression.  See WebMD, http://www.webmd.com/drugs (last visited September 10, 2013).

NOS, and was prescribed Trazodone,[7] Seroquel,[8] and Celexa.[9]  (Tr. 255).  On October 10, 2003,

plaintiff complained of hip and elbow pain.  (Tr. 451).  In April 2004, plaintiff was diagnosed with

depressive disorder NOS and antisocial personality disorder, and was prescribed Prozac.[10]  (Tr.

253).  On July 20, 2004, plaintiff complained of pain in the shoulders and the right hip.  (Tr. 446).

Plaintiff complained of pain in the right leg and hip on September 30, 2004.  (Tr. 442).  Plaintiff

received treatment for sickle cell disease on October 22, 2004, at which time he complained of

pain originating in his right hip and radiating to his entire right leg.  (Tr. 439).  Plaintiff was given

IV fluids and Percocet.[11]  (Id.).  Plaintiff received treatment for sickle cell disease again on

October 29, 2004, and November 4, 2004.  (Tr. 437, 435).  On November 30, 2004, plaintiff was

diagnosed with sickle cell disease, depression, and osteoporosis.  (Tr. 430).  Plaintiff was

prescribed Trazodone, Seroquel, Prozac, and folic acid.  (Id.).  Plaintiff complained of depression

on October 26, 2005, and was prescribed Zoloft and Trazodone.  (Id.).  Plaintiff underwent x-rays

of the right hip on December 22, 2005, which revealed a right hip prosthesis.  (Tr. 207).  On April

20, 2006, plaintiff complained of right hip pain radiating down into the right thigh and into the

---

[7]Trazodone is an antidepressant drug indicated for the treatment of depression and other mood disorders.  See WebMD, http://www.webmd.com/drugs (last visited September 10, 2013).

[8]Seroquel is an anti-psychotic drug indicated for the treatment of bipolar disorder and schizophrenia.  See WebMD, http://www.webmd.com/drugs (last visited September 10, 2013).

[9]Celexa is an antidepressant drug indicated for the treatment of depression.  See Physician's Desk Reference ("PDR"), 1161 (63rd Ed. 2009).

[10]Prozac is indicated for the treatment of major depressive disorder.  PDR at 1854.

[11]Percocet is indicated for the relief of moderate to moderately severe pain.  See PDR at 1127

knee.  (Tr. 219).  Plaintiff reported that his depression was stable.  (Id.).  On October 3, 2006, plaintiff complained of an aching pain in his thighs, going down into his knees.  (Tr. 217). Plaintiff was prescribed folic acid, Trazodone, and Acetaminophen.  (Id.).  On March 28, 2007, plaintiff was diagnosed with depressive disorder NOS, with a GAF score of 65.  (Tr. 294-95). Plaintiff was prescribed Trazodone.  (Id.).  On April 22, 2007, plaintiff complained of severe pain due to sickle cell disease, especially in his legs.  (Tr. 213).

Plaintiff was admitted to Greenville Regional Hospital from April 22, 2007, through April 25, 2007, due to a sickle cell crisis.  (Tr. 225).  Plaintiff complained of diffuse joint pain and weakness.  (Id.).

On September 17, 2007, plaintiff was diagnosed with sickle cell disease with history of right hip replacement, causing chronic pain; depression; and a GAF score of 60-65.[12]  (Tr. 400). Plaintiff's dosage of Trazodone was increased.  (Id.).  Plaintiff complained of depression on January 7, 2008.  (Tr. 238).  Plaintiff was seen for treatment of sickle cell disease, depression, and right hip pain on March 6, 2008.  (Tr. 396).  Plaintiff's sickle cell disease was found to be stable. (Id.).  In August 2008 and December 2008, plaintiff was diagnosed with sickle cell disease without crisis; depressive disorder; and other personality disorder.  (Tr. 311, 307).  On February 17, 2009, plaintiff reported that he felt good and had no sickle cell crisis symptoms.  (Tr. 302). Plaintiff complained of occasional right hip pain.  (Id.).  Plaintiff had some anxiety and he reported missing quite a few doses of Trazodone.  (Id.).  Plaintiff was assessed a GAF score of 65-70.  (Tr. 304).

---

[12]A GAF score of 51 to 60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  DSM-IV at 32.

Plaintiff presented to Brian Kaebnick, M.D., at Barnes Jewish Hospital on December 9, 2009, with complaints of chronic pain from sickle cell disease. (Tr. 663). Plaintiff sought to establish care after moving to St. Louis. (Id.). Plaintiff reported increased pain in his right hip for the past three weeks, and left hand pain due to getting in a fight in September 2009. (Id.). Plaintiff reported frequent sickle cell crises. (Id.). Plaintiff was unable to tell Dr. Kaebnick how often the attacks occur, but stated that they occur more than three times a year. (Id.). Plaintiff's last hospitalization for sickle cell disease was in 2008. (Id.). Dr. Kaebnick indicated that plaintiff now requires a cane to ambulate. (Id.). Upon examination, plaintiff was lethargic and was in mild discomfort sitting in a chair. (Tr. 664). Plaintiff had limited range of motion of the right hip in flexion, and was able to ambulate with a cane. (Id.). Dr. Kaebnick noted that plaintiff's hip replacement was likely wearing out as it was seventeen years old, but plaintiff was not interested in surgery because it could require a blood transfusion and he was a Jehovah's Witness. (Id.). Dr. Kaebnick prescribed Tramadol[13] for plaintiff's hip pain. (Id.). Dr. Kaebnick stated that plaintiff's pain seems to be localized to his right hip and related to the hip replacement rather than sickle cell pain. (Id.). Plaintiff reported increased depression and stress, and was taking Trazodone. (Id.). Plaintiff indicated that he liked the Trazodone and did not want any medication changes. (Id.).

Plaintiff underwent x-rays of the right hip on December 9, 2009, which revealed right

---

[13]Tramadol is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time. See PDR at 2429.

bipolar hemiarthroplasty.[14]  (Tr. 655).

Plaintiff presented to the emergency room at Barnes-Jewish Hospital on January 16, 2010, with complaints of rectal pain and bleeding for seven days.  (Tr. 669).  Plaintiff was diagnosed with hemorrhoids, and was given pain medication.  (Tr. 674-75).

Plaintiff presented to the emergency room on January 20, 2010, with complaints of pain in the buttocks and fever.  (Tr. 703).  Plaintiff was diagnosed with a large perirectal abscess[15] and hepatomegaly.[16]  (Tr. 726).  Plaintiff underwent surgical removal of the abscess on January 21, 2010.  (Tr. 739).  On January 25, 2010, an abdominal CT scan revealed an interval decrease in the perirectal abscess; sequela of sickle cell disease including cardiomegaly,[17] calcified and shrunken spleen, and right total hip arthroplasty.  (Tr. 742-43).  Plaintiff underwent a second surgery to remove the abscess on January 26, 2010.  (Tr. 736).

State agency psychologist Kyle DeVore, Ph.D., completed a Psychiatric Review Technique on February 25, 2010, in which he expressed the opinion that plaintiff's mental impairment was not severe and resulted in mild limitations in his activities of daily living; ability to maintain social functioning; and ability to maintain concentration, persistence, or pace.  (Tr. 768).

Plaintiff presented to Morey Blinder, M.D. at Washington University School of Medicine Division of Hematology on March 15, 2010, to establish care for sickle cell disease.  (Tr. 772-74).

―――――――――――――――

[14]Joint surgery in which one joint surface is replaced with artificial material, usually metal. Stedman's at 865.

[15]An abscess in connective tissue adjacent to the rectum or anus.  Stedman's at 6.

[16]Enlargement of the liver.  Stedman's at 878.

[17]Enlargement of the heart.  Stedman's at 313.

Plaintiff reported intermittent sickle cell related pain, usually involving the back and extremities. (Tr. 772).  Plaintiff had been taking ibuprofen and Percocet for his pain, but reported that the Percocet did not work very well and he stopped it three days prior.  (Id.).  Plaintiff requested Vicodin.[18]  (Id.).  Dr. Blinder noted that plaintiff had had his prescription for Percocet refilled five days prior, so he would not prescribe Vicodin unless plaintiff brought in his unused Percocet.  (Tr. 773).  Plaintiff also had a history of depression and was taking Trazodone.  (Id.).

Plaintiff saw Dr. Blinder on June 14, 2010, at which time he reported experiencing increased sickle cell pain over the past few weeks due to the weather.  (Tr. 778).  Plaintiff was taking Vicodin for pain management and was pleased with the level of pain relief.  (Id.).  Dr. Blinder stated that plaintiff was managing intermittent sickle cell pain well with Vicodin.  (Id.).  Dr. Blinder refilled plaintiff's Vicodin.  (Id.).

Plaintiff saw Dr. Blinder on September 13, 2010, at which time Dr. Blinder stated that plaintiff had done fairly well since his last office visit and had not required hospitalizations or emergency room visits related to his sickle cell disease.  (Tr. 776).  Plaintiff complained of chronic sickle cell related pain managed with Vicodin.  (Id.).  Plaintiff reported symptoms of depression, and reported that the Trazodone helped him sleep but did not particularly help his mood.  (Id.).  Dr. Blinder diagnosed plaintiff with sickle cell disease, clinically stable at present.  (Id.).  Dr. Blinder continued plaintiff's Vicodin for his intermittent sickle cell-related pain.  (Id.).  Dr. Blinder prescribed a one-month supply of Tramadol, originally prescribed by his primary care provider, with instructions to schedule an appointment with Dr. Kaebnick at the clinic.  (Id.).  Dr. Blinder

---

[18]Vicodin is a narcotic analgesic indicated for the relief of moderate to moderately severe pain.  See PDR at 532.

also refilled plaintiff's Trazodone for his depression, and recommended that he see a psychiatrist. (Id.).

## The ALJ's Determination

The ALJ made the following findings:

1.    Born on July 14, 1966, the claimant had not attained age 22 as of July 14, 1984, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2.    The claimant has not engaged in substantial gainful activity since July 14, 1984, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: Sickle cell anemia and residuals of right hip replacement (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he will be unable to climb ropes, ladders and scaffolding; he will only occasionally be able to climb stairs and ramps; he will need to avoid concentrated exposure to hazards of height; and he will need to be afforded the ability to use a cane as necessary.  He also is to be afforded a sit/stand option.

6.    The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on July 14, 1966 and was 18 years old on July 14, 1984, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from July 14, 1984, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

(Tr. 15-20).

The ALJ's final decision reads as follows:

Based on the application for child's insurance benefits filed on September 30, 2009, the claimant was not disabled as defined in section 223(d) of the Social Security Act prior to July 13, 1988, the date he attained age 22.

Based on the application for supplemental security income filed on September 30,  2009, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 21).

## Discussion

### A.     Standard of Review

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency.  See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996).  The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it.  See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000).  Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.  See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998).  If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld.  See Robinson v. Sullivan, 956 F.2d 836, 838 (8th

- 13 -

Cir. 1992).  The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision.  See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)(citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)).  "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary."  Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998).  The analysis required has been described as a "searching inquiry."  Id.

**B.      Determination of Disability**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416 (I)(1)(a); U.S.C. § 423 (d)(1)(a).  The claimant has the burden of proving that s/he has a disabling impairment.  See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998.  First, it is determined whether the claimant is currently engaged in "substantial gainful employment."  If the claimant is, disability benefits must be denied.  See 20 C.F.R. §§ 404.1520, 416.920 (b).  Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments.  See 20 C.F.R §§ 404.1520 (c), 416.920 (c).  To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities."  Id.  Age, education and work experience of a

- 14 -

claimant are not considered in making the "severity" determination.  See id.

     If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment.  See 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  This listing is found in Appendix One to 20 C.F.R. 404.  20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired.  See 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his or her past work.  See 20 C.F.R. § 404.1520 (e), 416.920 (e).  If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled.  See id.  If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. See 20 C.F.R. §§ 404.1520 (f), 416.920 (f).  The claimant is entitled to disability benefits only if s/he is not able to perform any other work.  See id.  Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work.  See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

     The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.  The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the

determination of whether a mental impairment exists.  See 20 C.F.R. §§ 404.1520a (b) (1),

416.920a (b) (1).  If it is determined that a mental impairment exists, the Commissioner must

indicate whether medical findings "especially relevant to the ability to work are present or absent."

20 C.F.R. §§ 404.1520a (b) (2), 416.920a (b) (2).  The Commissioner must then rate the degree

of functional loss resulting from the impairments in four areas deemed essential to work:

activities of daily living, social functioning, concentration, and persistence or pace.  See

20 C.F.R. §§ 404.1520a (b) (3), 416.920a (b) (3).  Functional loss is rated on a scale that ranges

from no limitation to a level of severity which is incompatible with the ability to perform work-

related activities.  See id.  Next, the Commissioner must determine the severity of the impairment

based on those ratings.  See 20 C.F.R. §§ 404.1520a (c), 416.920a (c).  If the impairment is

severe, the Commissioner must determine if it meets or equals a listed mental disorder.  See

20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).  This is completed by comparing the presence of

medical findings and the rating of functional loss against the paragraph A and B criteria of the

Listing of the appropriate mental disorders.  See id.  If there is a severe impairment but the

impairment does not meet or equal the listings, then the Commissioner must prepare a residual

functional capacity assessment.  See 20 C.F.R. §§ 404.1520a (c)(3), 416.920a (c)(3).

**C.   Plaintiff's Claims**

Plaintiff first argues that the ALJ erred in evaluating the credibility of plaintiff's subjective

complaints.  Plaintiff next argues that the ALJ's RFC determination is not supported by

substantial evidence.  The undersigned will address plaintiff's claims in turn.

As an initial matter, the court notes that to be entitled to child's disability benefits under

Title II of the Social Security Act, plaintiff must show that he was disabled prior to attaining age

- 16 -

22.  See 20 C.F.R. § 404.350(a)(5).  Thus, plaintiff must demonstrate that he was disabled before

July 14, 1988.  Plaintiff, however, has failed to introduce any medical evidence from his alleged

onset date of July 14, 1984 through July 14, 1988.  Consequently, plaintiff did not meet his

burden of establishing entitlement to child's disability under Title II.

   To be entitled to Supplemental Security Income under Title XVI of the Act, plaintiff must

show that he was disabled while his application was pending.  See 20 C.F.R. §§ 416.330,

416.335.  The relevant period with respect to plaintiff's Title XVI application, therefore, is

September 30, 2009, through January 26, 2011.

   As stated above, plaintiff first claims that the ALJ erred in assessing the credibility of his

subjective complaints.  "While the claimant has the burden of proving that the disability results

from a medically determinable physical or mental impairment, direct medical evidence of the cause

and effect relationship between the impairment and the degree of claimant's subjective complaints

need not be produced."  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  Although an

ALJ may reject a claimant's subjective allegations of pain and limitation, in doing so the ALJ

"must make an express credibility determination detailing reasons for discrediting the testimony,

must set forth the inconsistencies, and must discuss the Polaski factors."  Kelley, 133 F.3d at 588.

Polaski requires the consideration of:  (1) the claimant's daily activities; (2) the duration,

frequency, and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage,

effectiveness and side effects of the medication; and (5) functional restrictions.  Polaski, 739 F.2d

at 1322.  See also Burress, 141 F.3d at 880; 20 C.F.R. § 416.929.

   "The ALJ is not required to discuss methodically each Polaski consideration, so long as he

acknowledged and examined those considerations before discounting [a claimant's] subjective

- 17 -

complaints." <u>Partee v. Astrue</u>, 638 F.3d 860, 865 (8th Cir. 2011).  The determination of a

plaintiff's credibility is for the Commissioner, and not the court, to make.  <u>Pearsall v. Massanari</u>,

274 F.3d 1211, 1218 (8th Cir. 2001).  The ALJ may disbelieve a claimant's complaints if there are

inconsistencies in the evidence as a whole.  <u>Polaski</u>, 739 F.2d at 1322.  When an ALJ explicitly

finds that the claimant's testimony is not credible and gives good reasons for the findings, the

court will usually defer to the ALJ.  <u>Casey v. Astrue</u>, 503 F.3d 687, 696 (8th Cir. 2007).

> The ALJ stated as follows regarding the credibility of plaintiff's subjective complaints:
>
> After careful consideration of the evidence, the undersigned finds that the claimant's
> medically determinable impairments could reasonably be expected to cause the alleged
> symptoms; however, the claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not credible to the extent they are inconsistent with
> the above residual functional capacity assessment.  In so finding, the Administrative Law
> Judge finds significant the lack of more clinically significant findings on examination and
> diagnostic work-up conducted, said findings as heretofore discussed.

(Tr. 19).

The undersigned finds that the ALJ's credibility determination is not supported by

substantial evidence.  The ALJ did not discuss the relevant <u>Polaski</u> factors, and there is no

indication that they were considered.  Although the ALJ is not required to discuss each credibility

factor, <u>see</u> <u>Halverson v. Astrue</u>, 600 F.3d 922, 932 (8th Cir. 2010), in this case the ALJ did not

give any specific reasons for discounting plaintiff's credibility, <u>cf.</u> <u>McCoy v. Astrue</u>, 648 F.3d 605,

614 (8th Cir. 2011) (if ALJ explicitly discredits claimant and gives good reason for doing so, the

court normally defers to ALJ's credibility determination).

To the extent the ALJ's finding was based on the belief that plaintiff's complaints were not

fully supported by the objective medical evidence, the lack of objective evidence is only one factor

to consider in evaluating credibility.  <u>See</u> <u>Curran-Kicksey v. Barnhart</u>, 315 F.3d 964, 968-69 (8th

- 18 -

Cir. 2003).  Further, the medical record reveals that plaintiff's diagnosis of sickle cell disease has been confirmed by laboratory findings and sequela of sickle cell disease were noted on a CT scan; plaintiff has been hospitalized on multiple occasions for sickle cell crises; and plaintiff takes narcotic pain medication to manage his sickle cell pain.  (Tr. 742-43, 772-74, 778, 776).  Dr. Kaebnick noted limited range of motion of plaintiff's right hip and indicated that plaintiff requires a cane to ambulate.  (Tr. 664).  Plaintiff consistently complained of hip and sickle cell pain.  (Tr. 663, 772, 778, 776).  Plaintiff also reported symptoms of depression, for which he was prescribed Trazodone.  (Tr. 664, 773, 776).

With regard to plaintiff's daily activities, plaintiff testified that he experiences a sickle cell crisis approximately fifteen days a month, during which he is bedridden; spends a lot of time sleeping during the day even when he is not in crisis due to the pain medication and sleep medication he takes; and always uses his cane when walking.  (Tr. 31, 37-38).  Plaintiff testified that he manages his sickle cell crises at home with narcotic pain medication and rest.  (Tr. 37). The ALJ, however, did not discuss plaintiff's testimony regarding his daily activities or the dosage and side effects of his medications.  Rather, the ALJ's credibility analysis appears to based solely on the perceived lack of objective medical evidence to support plaintiff's allegations.  The record provides support for plaintiff's testimony that he experienced frequent and severe pain.  See Layton v. Heckler, 726 F.2d 440, 442 (8th Cir. 1984) (evidence that claimant takes high dose of pain medications and has consistently complained of pain undermines ALJ's determination that claimant's allegations of pain are not credible).

In light of the above, it cannot be said that the ALJ demonstrated in his decision that he considered all of the evidence relevant to plaintiff's complaints or that the evidence he considered

so contradicted plaintiff's subjective complaints that his testimony could be discounted as not

credible.  Masterson v. Barnhart, 363 F.3d 731, 738-39 (8th Cir. 2004).

     The ALJ made the following determination regarding plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) and 416.967(b) except that he will be unable to climb ropes, ladders
> and scaffolding; he will only occasionally be able to climb stairs and ramps; he will need to
> avoid concentrated exposure to hazards of height; and he will need to be afforded the
> ability to use a cane as necessary.  He also is to be afforded a sit/stand option.

(Tr. 18).

     Where, as here, an ALJ errs in his determination to discredit a claimant's subjective

complaints and in his review of the medical evidence, the resulting RFC assessment is called into

question inasmuch as it does not include all of the claimant's limitations.  See Holmstrom v.

Massanari, 270 F.3d 715, 722 (8th Cir. 2001).  RFC is defined as "what [the claimant] can still

do" despite his "physical or mental limitations."  20 C.F.R. § 404.1545(a).  "When determining

whether a claimant can engage in substantial employment, an ALJ must consider the combination

of the claimant's mental and physical impairments."  Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir.

2001).  The Eighth Circuit has noted the ALJ must determine a claimant's RFC based on all of the

relevant evidence, including the medical records, observations of treating physicians and others,

and an individual's own description of his limitations.  McKinney v. Apfel, 228 F.3d 860, 863 (8th

Cir. 2000) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).

     In support of his RFC determination, the ALJ indicated that he had considered the findings

of the "State agency medical physicians and other consultants."  (Tr. 19).  There is no opinion in

the record, however, from a state agency physician.  The record only contains the opinion of a

- 20 -

non-physician single decision-maker.  (Tr. 43-48).  "An ALJ may rely upon the opinion of a nontreating or consultative 'medical source,' but he may not give the same weight to the opinion of a nonmedical, or lay, state agency evaluator."  Williams v. Astrue, 4:11CV57 AGF, 2012 WL 946806, * 9 (E.D. Mo. Mar. 20, 2012).  No examining physician expressed an opinion regarding plaintiff's work-related limitations.

The undersigned finds that the ALJ's RFC determination is not supported by substantial evidence in the record as a whole.  The ALJ performed a faulty credibility analysis, and as a result, failed to incorporate all of plaintiff's credible allegations of pain and limitation.  The ALJ failed to point to any medical evidence in support of his RFC determination.

## Conclusion

In sum, the decision of the ALJ finding plaintiff not disabled under Title XVI of the Social Security Act is not supported by substantial evidence.  The ALJ failed to perform a proper credibility analysis of plaintiff's subjective complaints of pain and limitation.  The ALJ's assessment of plaintiff's residual functional capacity was not based on substantial medical evidence in the record thereby producing an erroneous residual functional capacity.  For these reasons, this cause will be reversed and remanded to the ALJ in order for the ALJ to perform a proper credibility analysis; formulate a new mental residual functional capacity for plaintiff based on the medical evidence in the record, and further develop the medical record if necessary; and then to continue with the next steps of the sequential evaluation process.  Accordingly, a Judgment of Reversal and Remand will be entered separately in favor of plaintiff in accordance with this Memorandum.

Dated this __30th__ day of September, 2013.

_Lewis M. Blanton_

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE